STATE OF NORTH CAROLINA v. JEFFERY R. RIDDICK

No. 284A84

(Filed 5 March 1986)

1. **Criminal Law § 34.5— defendant's guilt of other offenses—admissibility to show identity**

   The trial court in a first degree burglary case did not err in admitting evidence concerning burglaries committed by defendant in 1977 in Connecticut, concluding that the *modus operandi* in the Connecticut crimes was so similar to that in the North Carolina crimes that evidence of the earlier crimes, to which defendant had pled guilty, was admissible on the issue of defendant's identity in the North Carolina crimes, where the victims in all the crimes were middle aged to elderly Caucasian women alone in their homes late in the evening when the crimes were committed; the Connecticut victims lived in the same neighborhood, as did the North Carolina victims; in both states, electric power to the burglarized homes was turned off at the fuse box and telephones were disabled; the perpetrator in both states wore a dark toboggan similar to the one worn by defendant when arrested; in both states the perpetrator either used or attempted to use handcuffs to disable his victim and had difficulty operating the handcuffs; and the perpetrator in both states stole fresh fruit from the kitchens. Moreover, remoteness in time and location and dissimilarity—in the Connecticut crimes defendant committed sexual assaults on his victims which he did not do in the North Carolina offenses—did not prevent admission of the evidence.

2. **Criminal Law § 34.5— defendant's guilt of other offenses—identity of defendant—admission not unfairly prejudicial**

   There was no merit to defendant's contention that, even if evidence of Connecticut crimes was probative on the issue of identity of the perpetrator of the North Carolina crimes, the probative force was outweighed by its tendency unfairly to prejudice the jury so as to lead them to convict defendant for an improper reason, since the evidence, because of the remarkable similarities in the Connecticut and North Carolina crimes, was highly probative on the issue of identity of the North Carolina perpetrator; identity of the perpetrator of the North Carolina burglaries was the only real issue at trial, and evidence connecting defendant to the crimes was totally circumstantial so that use by the State of any additional circumstance which legitimately tended to identify defendant as the perpetrator was fully warranted; and the trial judge in the

case at bar excluded any reference to the sexual assaults committed by defendant in the Connecticut crimes in order to avoid whatever additional prejudice would accrue to defendant from this fact.

**3. Burglary and Unlawful Breakings § 4.1— wallet in Connecticut mailbox—admissibility on issue of identity**

The trial court in a first degree burglary case did not err in admitting into evidence a wallet and its contents found in a Connecticut mailbox six weeks before the burglaries in question, since the evidence was relevant on the issue of defendant's identity as the perpetrator of the crimes charged.

**4. Assault and Battery § 14— attempted malicious throwing of acid—insufficiency of evidence**

In a prosecution of defendant for first degree burglary, assault, attempted malicious throwing of acid, and various larcenies, evidence, though circumstantial, was sufficient to identify defendant as the perpetrator of all the crimes except the attempted malicious throwing of acid, since there was evidence that muriatic acid was found on the windowsill and front door of one victim's residence, but assuming that defendant was responsible for its being there, there was no evidence that defendant intended by its use to murder, maim or disfigure anyone, that he actually threw or attempted to throw the acid, or that he threw it or attempted to throw it at some person.

Justice BILLINGS took no part in the consideration or decision of this case.

BEFORE Lewis (John B.), J., at the 7 May 1984 Criminal Session of MARTIN County Superior Court, defendant was convicted of first degree burglary, assault with a deadly weapon inflicting serious injury, attempted first degree burglary, attempted malicious throwing of acid, felonious larceny of a motor vehicle, nonfelonious larceny of a motor vehicle, larceny of firearms, and larceny from the person. Defendant received a sentence of life imprisonment for the first degree burglary conviction and a total of seventy-two years for the other convictions, with all sentences to run consecutively. Defendant appeals the life sentence as of right to this Court. N.C.G.S. § 7A-27(a). Defendant's motion to bypass the Court of Appeals as to the lesser sentences allowed. N.C.G.S. § 7A-31(b).

*Lacy H. Thornburg, Attorney General, by Sarah C. Young, Assistant Attorney General, for the state.*

*J. Melvin Bowen and James R. Batchelor, Jr. for defendant appellant.*

EXUM, Justice.

The questions presented in this appeal are whether the trial court erred in (1) admitting evidence that defendant had committed two burglaries in Connecticut in 1977, six years before the burglaries for which he was being tried; (2) admitting defendant's wallet and contents found in Connecticut six weeks before the crimes for which he was being tried; and (3) denying defendant's motions to dismiss for insufficiency of the evidence. We find no error in Judge Lewis's rulings on the evidence.[1] We conclude defendant's conviction for attempted malicious throwing of acid (No. 83CRS3077) should be reversed for insufficiency of the evidence. We find no error in and leave undisturbed defendant's remaining convictions and the sentences imposed thereon.

I.

The state's evidence tended to show the following: On 4 September 1983, Ann Modlin, aged sixty-two, a Caucasian woman alone in her home, was awakened after midnight by noises from the front porch of her house located in Everetts in Martin County near Williamston. Mrs. Modlin saw a man tamper with her fuse box until her electricity went off. She went to the front door and screamed. The man ran. Mrs. Modlin noticed unfamiliar moisture on the windowsill and front door which was later determined to be muriatic acid. She went to a back bedroom and yelled through an open window to alert her neighbors. The intruder then was attempting to enter through her back door. Through another open window he fired a small caliber gun three or four times, striking Mrs. Modlin once in her arm. Witnesses compared the gun's report to firecrackers. X-rays taken later at the hospital showed Mrs. Modlin had been shot with many small pellets which left her arm swollen and bruised. Investigators also found small pellet holes in the window area through which the shots were fired, and one small lead pellet inside that bedroom. Neighbors arrived and called the sheriff's department.

---

1. We have not relied on the new North Carolina Rules of Evidence, N.C.G.S. § 8C-1, in resolving the evidentiary question because this case was tried before these rules became effective on 1 July 1984. By this observation we do not mean to imply that a different result would have been reached had the new rules been applied.

Shortly thereafter Christine Bailey, an eighty-four-year-old Caucasian woman who lived alone, was awakened by a noise at her house, located only several blocks from the Modlin home. When Mrs. Bailey entered her kitchen she saw a man climbing through a window carrying a flashlight and wearing a dark toboggan and gloves. The toboggan was similar to the one being worn by defendant when he was later arrested. Her assailant told her to return to her bed and pulled the telephone cord out of the wall. The intruder grabbed Mrs. Bailey by the arms, injuring her and causing extensive bruising and bleeding. He took her diamond ring and wedding band from her fingers, her .32 caliber Smith and Wesson pistol from the drawer of the nightstand, pulled metal handcuffs from his pocket, and struggled unsuccessfully to put the handcuffs on her. He returned to the kitchen and took several cans of food (including sardines and vienna sausages) and some bananas. A few minutes later Mrs. Bailey found the back door open and noticed her Chrysler automobile was gone. She walked to her neighbor's house one-fourth mile away; the neighbors notified the sheriff's department.

An officer investigating both crimes, Ronnie Wynne, left his house several miles south of Williamston at about 3:20 a.m. As he left he saw a car matching the description of Mrs. Bailey's stolen Chrysler. He chased the car for about one mile until it went into a ditch on the side of the road. The driver was gone when Officer Wynne approached the car, which was later identified as Mrs. Bailey's. In the rear seat of the car were several cans of food of the same varieties and brands as those taken from Mrs. Bailey's kitchen, and a banana peel. A handgun and a blue duffel bag were found on the front seat. The handgun on the front seat, a .32 caliber Smith and Wesson, contained five unfired cartridges identical in type and brand to others found under Mrs. Bailey's bed after the burglary, and one fired shell casing. The gun fit the description of the pistol stolen from her nightstand. Police found another handgun, a Ruger .22 caliber revolver, protruding from the duffel bag. Loaded in the Ruger were five unfired regular .22 caliber cartridges and one unfired .22 caliber super X "rat shot" cartridge. Rat shot rifle or pistol cartridges contain small pellets suitable for killing rats. They are rare and outdated and will damage bored weapons if used in them frequently. One more rat shot cartridge was loose in the duffel bag. The bag also contained

two regular .22 caliber cartridges, two "Wanted-to-Buy" ads, three unmatched gloves, one pair of khaki colored shorts with size 32 waist, and a nonfunctional orange Eveready flashlight. Tennis shoe tracks led away from the car into the woods.

The next day shortly after 7 a.m., defendant was stopped as he attempted to enter the Chesapeake Bay Bridge-Tunnel in a pickup truck belonging to William Tadlock without paying the toll. When confronted by Virginia authorities, defendant, who was wearing a dark toboggan and tennis shoes, stated that the truck was stolen. Defendant was then about 100 miles north of Williamston, where, between 8:30 and 9:30 the night before, Tadlock's truck had been stolen from his driveway. Tadlock's home is located about three-fourths of a mile north of where Mrs. Bailey's car was abandoned and seven miles north of Everetts.

Virginia police found many items in the truck which did not belong to Tadlock and were not in his truck before it was stolen, including: a pair of shiny metal handcuffs, two pairs of driving gloves, one of which bore human bloodstains, a flashlight, and a rat shot cartridge similar to the one found in the blue duffel bag in Mrs. Bailey's car. Tadlock's 12-gauge pump shotgun, which had been in its rack inside the truck's passenger compartment, was recovered with the stolen truck, but a new Smith and Wesson 9mm. Luger pistol was never recovered. On instruction from North Carolina investigators, Virginia police immediately confiscated the tennis shoes defendant was wearing when arrested. The soles matched in size and tread the prints left near Mrs. Bailey's abandoned car.

About six weeks before the events described above, postal workers found a wallet in a mailbox in Darien, Connecticut, which contained a "Wanted-to-Buy" advertisement clipped from a newspaper soliciting sellers of, among other items, diamonds and jewelry, two identification cards bearing defendant's photograph, a North Carolina driver's license bearing defendant's photograph, and an address book. Names and addresses in the address book included two Connecticut women who had been victims of burglaries and sexual assaults in Connecticut in 1977, for which defendant was convicted and served an active prison sentence. One of the Connecticut burglary victims and a Connecticut police officer who had investigated both burglaries described the crimes defendant committed there.

Defendant presented no evidence at trial.

## II.

[1]  Defendant's first assignment of error challenges the trial court's admission of evidence concerning the two burglaries defendant committed in 1977 in Connecticut. This evidence tended to show as follows: On 13 May 1977 at approximately 11 p.m. Mrs. Lila Murphy, who lived in Greenwich, Connecticut, was awakened in her bedroom by the defendant, who handcuffed her. Defendant had difficulty putting the handcuffs on her. Her electricity had been turned off and defendant was using a flashlight. He was dressed in a jogging suit and had "something on his head." Later investigation revealed that defendant had taken strawberries from Mrs. Murphy's refrigerator and had turned off the current to the house at the fuse box. Defendant also had taken money from the home. Further testimony revealed that on 18 May 1977 at approximately 11 p.m. defendant broke into and entered the home of Mrs. Rita Noonan who lived less than one-half mile from Mrs. Murphy. At the Noonan residence defendant disabled the telephone, handcuffed Mrs. Noonan, who arrived home after defendant had entered, and took bananas and orange juice from the refrigerator. He wore a toboggan. Both Mrs. Murphy and Mrs. Noonan were Caucasian, lived alone and were at the time of the crimes aged, respectively, fifty-three and sixty-one years.

The state contended evidence of the Connecticut burglaries was admissible on the issue of defendant's identity in the North Carolina burglaries committed against Mrs. Modlin and Mrs. Bailey. After a carefully conducted voir dire on the issue of admissibility, Judge Lewis concluded that the *modus operandi* in the Connecticut crimes was so similar to the *modus operandi* in the North Carolina crimes that evidence of the Connecticut crimes to which defendant had pled guilty, was admissible under the theory urged by the state. We agree with this ruling.

The general rule is "in a prosecution for a particular crime, the state cannot offer evidence tending to show that the accused has committed another distinct, independent, or separate offense." *State v. McClain*, 240 N.C. 171, 172, 81 S.E. 2d 364, 365 (1954). "This is true even though the other offense is of the same nature as the crime charged." *Id.* "However, if such evidence tends to prove any other relevant fact it will not be excluded

merely because it shows guilt of another crime." *State v. Irwin,* 304 N.C. 93, 99, 282 S.E. 2d 439, 444 (1981).

This Court set forth the rationale for the general rule in *McClain* as follows: (1) Logically, the commission of an independent offense alone does not prove the commission of another crime; (2) admitting such evidence violates the rule forbidding the state initially to attack defendant's character, and to prove bad character by evidence of specific acts inadmissible for that purpose; (3) proof of defendant's guilt of another equally grave offense prompts a ready acceptance of his guilt of the crime charged, stripping him of the presumption of innocence; and (4) evidence of other crimes compels defendant to meet charges not included in the indictment, confuses him in his defense, and distracts the jury. *McClain,* 240 N.C. at 173-74, 81 S.E. 2d at 365-66.

There are, however, exceptions to the general rule of exclusion. They are listed in *McClain.* One is applicable to the case at bar:

> 4. Where the accused is not definitely identified as the perpetrator of the crime charged and the circumstances tend to show that the crime charged and another offense were committed by the same person, evidence that the accused committed the other offense is admissible to identify him as the perpetrator of the crime charged.

*McClain,* 240 at 175-76, 81 S.E. 2d at 367.

The application of this exception requires "some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes." *State v. Moore,* 309 N.C. 102, 106, 305 S.E. 2d 542, 545 (1983). Here we think there are both unusual facts and strikingly similar circumstances in the Connecticut and North Carolina burglaries so as to permit a reasonable inference that the person who committed the Connecticut burglaries, *i.e.,* the defendant here, also committed the North Carolina burglaries. The victims in all these crimes were middle-aged to elderly Caucasian women alone in their homes late in the evening when the crimes were committed. Both the Connecticut victims on one hand and the North Carolina victims on the other lived in the same neighborhoods in their respective locales. In both the Connecticut crime against Mrs.

Murphy and the North Carolina crime against Mrs. Modlin, electric power to the homes was turned off at the fuse box. In both the Connecticut crime against Mrs. Noonan and the North Carolina crime against Mrs. Bailey, the telephones were disabled; and the perpetrator in both these crimes wore a dark toboggan similar to the one worn by defendant when arrested. In both the Connecticut crimes and the North Carolina crime against Mrs. Bailey, the perpetrator either used or attempted to use handcuffs to disable his victim and had difficulty operating the handcuffs. A relatively unusual circumstance and perhaps the most telling of all is that in both Connecticut crimes and in the North Carolina crime against Mrs. Bailey, defendant stole fresh fruit from the respective kitchens. Needless to say, the theft of fresh fruit is rarely a circumstance occurring in an ordinary burglary.

Defendant argues that the remoteness in time and location militates against admission of the Connecticut burglaries. Defendant was, however, incarcerated in Connecticut as punishment for those burglaries. He was not released there until approximately six months before the North Carolina crimes were committed. This incarceration effectively explains the remoteness in time. For cases sustaining the admission of other crimes committed at similar intervals from the crimes being tried, see *State v. Barfield*, 298 N.C. 306, 259 S.E. 2d 510 (1979); *State v. Smoak*, 213 N.C. 79, 195 S.E. 72 (1937). Remoteness in time is more significant when evidence of another crime is admitted to show that it and the crime being tried both arose out of a common scheme or plan. *State v. Shane*, 304 N.C. 643, 285 S.E. 2d 813 (1982). It would be unlikely, though not inconceivable, that crimes committed several years apart were planned at the same time. Remoteness in time is less important when the other crime is admitted because its *modus operandi* is so strikingly similar to the *modus operandi* of the crime being tried as to permit a reasonable inference that the same person committed both crimes. It is reasonable to think that a criminal who has adopted a particular *modus operandi* will continue to use it notwithstanding a long lapse of time between crimes. It is this latter theory which sustains the evidence's admission in this case.

Remoteness in location provides no reason in this age of rapid transportation to exclude evidence of the Connecticut

crimes. *State v. Irwin*, 304 N.C. 93, 282 S.E. 2d 439 (prior rob-
beries in Ohio admissible in North Carolina robbery trial).

Defendant next contends that because in both Connecticut
cases defendant committed sexual assaults on his victims, a factor
not present in either of the North Carolina offenses, the Connecti-
cut crimes are too dissimilar to be relevant on the issue of identi-
ty. This difference is explained in part by noting that in the
North Carolina burglary against Mrs. Modlin, defendant was
thwarted in his attempt to complete the burglary by Mrs.
Modlin's actions in discovering him early and screaming for help.
Although defendant apparently had an opportunity to, but did
not, sexually assault Mrs. Bailey in North Carolina, this dissimi-
larity alone, we conclude, does not render evidence of the Con-
necticut burglaries inadmissible in light of other substantial and
unusual similarities between the Connecticut and North Carolina
crimes. *Compare*, for example, *State v. Leggett*, 305 N.C. 213, 287
S.E. 2d 832 (1982); *State v. Perry*, 293 N.C. 97, 235 S.E. 2d 52
(1977); *State v. Thompson*, 290 N.C. 431, 226 S.E. 2d 487 (1976);
*State v. Tuggle*, 284 N.C. 515, 201 S.E. 2d 884 (1974), in which
other crimes evidence was ruled admissible on the question of
identity, *with State v. Moore*, 309 N.C. 102, 305 S.E. 2d 542, in
which evidence of other crimes was ruled inadmissible on the is-
sue of identity.

[2] Finally defendant argues that even if evidence of the Con-
necticut crimes was probative on the issue of the identity of the
perpetrator of the North Carolina crimes, the probative force of
this evidence was outweighed by its tendency unfairly to preju-
dice the jury so as to lead them to convict defendant in the in-
stant cases for an improper reason. We are cognizant of the
propensity for unfair prejudice to a defendant of the introduction
against him of evidence that he has committed crimes separate
and distinct from the crime or crimes for which he is being tried.
"Nevertheless, the facts of each case ultimately decide whether a
defendant's previous commission of [a former crime] is peculiarly
pertinent in his prosecution for another independent . . . crime."
*State v. Shane*, 304 N.C. at 654, 285 S.E. 2d at 820. While the
determination of whether the probative value of evidence is out-
weighed by its prejudicial effect lies within the trial judge's
discretion, *State v. Mason*, 315 N.C. 724, 340 S.E. 2d 430 (1986), "it
must affirmatively appear that the probative force of such evi-

dence outweighs the specter of undue prejudice to the defendant, and, in close cases, fundamental fairness requires giving defendant the benefit of the doubt and excluding the evidence." *State v. Shane,* 304 N.C. at 654, 285 S.E. 2d at 820.

In the instant case we are satisfied for three reasons that the probative force of the Connecticut crimes evidence was not outweighed by the potential this evidence had for unfairly prejudicing defendant. First, this evidence, because of the remarkable similarities in the Connecticut and North Carolina crimes, was highly probative on the issue of identity of the North Carolina perpetrator. Second, we note that the identity of the perpetrator of the North Carolina burglaries was the only real issue at trial. That the burglaries occurred was not really in dispute. Evidence connecting defendant to these crimes was totally circumstantial. Use, therefore, by the state of any additional circumstance which legitimately tended to identify defendant as the perpetrator of these crimes was fully warranted. As we said in *State v. Leggett,* 305 N.C. at 213, 287 S.E. 2d at 832:

> [T]he principal issue was the identity of the defendant as the perpetrator of the crimes charged. . . . [T]he issue of whether he was, in fact, the perpetrator [was] 'the very heart of the case.'

305 N.C. at 223, 287 S.E. 2d at 838, *quoting State v. Freeman,* 303 N.C. 299, 302, 278 S.E. 2d 207, 208-09 (1981). In *Freeman* we also sustained admissibility of evidence that defendant had committed a prior crime on the issue of his identity in part for the reason that identity was "the principal issue" in the case. Third, Judge Lewis in the case at bar carefully and properly excluded any reference to the sexual assaults committed by defendant in the Connecticut crimes in order to avoid whatever additional prejudice would accrue to defendant from this fact. In short, the highly probative nature of this evidence, the real need for its use, and Judge Lewis's careful removal of needlessly prejudicial aspects justifies its admission into evidence against defendant.

### III.

[3]  Defendant next contends evidence of the wallet and its contents, found in a Connecticut mailbox six weeks before the North

Carolina burglaries, was irrelevant and should not have been admitted.

> Evidence is relevant if it has any logical tendency to prove a fact at issue in a case, . . . and in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible. It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact.

*State v. Arnold,* 284 N.C. 41, 47, 199 S.E. 2d 423, 426 (1973) (citations omitted). The wallet contained a Martin County, North Carolina, birth certificate for one "Jeffery Rondale Riddick"; a North Carolina driver's license for one "Jeffery R. Riddick" with the same date of birth (16 December 1951) as appeared on the birth certificate, two laminated identification cards bearing the same photograph as appeared on the driver's license but bearing the name of one "Ron Brown" with an address of 4982 Main Street, Bridgeport, Connecticut, and with a birth date of 10 March 1955. The wallet also contained an address book and a "Wanted-to-Buy" advertisement. The address book contained the names and addresses of the Connecticut burglary victims and several names and addresses of persons in the Williamston area, one of which was an elderly Caucasian woman. The want ad indicated that a "Bremson Diamond Company, 198 Wilmington Street" wanted to buy various items including "diamonds, jewelry bought for immediate cash, highest prices paid upon inspection, all transactions confidential." Although the advertisement listed a number of other items which the advertiser wished to buy, the reference in the advertisement to diamonds and jewelry was underlined and boxed in with blue ink.

This evidence was relevant on the issue of defendant's identity as the perpetrator of at least the North Carolina burglary of Mrs. Bailey. Obviously the jury could reasonably find that the wallet and its contents belonged to defendant. The birth certificate tended to tie defendant to the county in North Carolina where the crimes were committed. The want ad was similar to the advertisement found in a duffel bag in the automobile stolen

from Mrs. Bailey. The perpetrator of the Bailey burglary took a diamond ring and wedding band. The advertisement found in the wallet indicated that defendant was interested in a place where jewelry could be sold "confidentially."

There was, therefore, no error in the admission of this evidence.

## IV.

[4]  Finally, defendant contends the trial court erred in denying his motion to dismiss all charges except the larceny of the Tadlock truck and the Tadlock firearm for insufficiency of the evidence. His argument is that the evidence is insufficient to identify him as the perpetrator of any of the other North Carolina crimes.

The question for decision is whether there is evidence from which a jury could reasonably infer that defendant committed the North Carolina crimes.

It is elementary that, upon a motion for judgment as of nonsuit in a criminal case, the evidence must be considered by the court in the light most favorable to the State. Where there are contradictions and discrepancies in the evidence, these must be resolved in the State's favor and the State must be given the benefit of every reasonable inference arising on the evidence. . . .

. . . The test of the sufficiency of the evidence to withstand a nonsuit motion is the same whether the evidence is circumstantial, direct or both. . . .

'When the motion for nonsuit calls into question the sufficiency of circumstantial evidence, the question for the court is whether a reasonable inference of defendant's guilt may be drawn from the circumstances. If so, it is for the jury to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.'

*State v. White*, 293 N.C. 91, 95, 235 S.E. 2d 55, 58 (1977) (*quoting State v. Rowland*, 263 N.C. 353, 358, 139 S.E. 2d 661, 665 (1965)) (citations omitted). Stated another way, the question is whether the state has offered substantial evidence that defendant perpetrated these crimes. "Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Brown*, 310 N.C. 563, 566, 313 S.E. 2d 585, 587 (1984). *Accord, State v. Smith*, 300 N.C. 71, 78, 265 S.E. 2d 164, 169 (1980).

The evidence on the issue of identity was: The perpetrator of the Bailey burglary stole diamond jewelry. The driver of Mrs. Bailey's stolen Chrysler, who escaped into the woods leaving tennis shoe prints, also left a blue duffel bag in the car containing clothes in defendant's size, a rat shot, pellet-type cartridge, a .22 caliber Ruger pistol with one such cartridge in it, several gloves, banana peels, cans of food taken from Mrs. Bailey's residence, and the pistol stolen from Mrs. Bailey. Defendant was arrested in Virginia in a truck stolen from Tadlock. At that time he was wearing a toboggan like the one worn by Mrs. Bailey's assailant and tennis shoes similar in size and tread to those which left footprints near Mrs. Bailey's stolen car. Items found in the truck which did not belong to its owner were: a .22 caliber rat shot, pellet-type cartridge identical to those found in Mrs. Bailey's car, gloves bearing human blood, handcuffs and a pocket flashlight. Mrs. Modlin was wounded by pellet-type ammunition from a weapon which sounded like a firecracker.

Taking this evidence in the light most favorable to the state, the jury could reasonably infer from it: The person who was arrested driving Tadlock's stolen truck not only stole the truck but also Mrs. Bailey's car. The person who stole Mrs. Bailey's car possessed a .22 caliber revolver and relatively unusual .22 caliber rat shot, or pellet-type, cartridges, with which he wounded Mrs. Modlin while attempting to burglarize her home. The person who stole Mrs. Bailey's car also burglarized Mrs. Bailey's home and thereafter stole from her a pistol and her diamond ring and wedding band. Since defendant was arrested in Tadlock's truck, then defendant was the perpetrator of all the other crimes. Defendant's earlier commission of burglaries in Connecticut remarkably similar in *modus operandi* to the burglaries of Mrs. Bailey and Mrs. Modlin and the contents of the defendant's wallet indicating he was interested in a place where diamond jewelry could be sold confidentially are additional pieces of circumstantial evidence which bolster the reasonableness of an inference that defendant perpetrated all the crimes except the attempted malicious throwing of acid.

As to this last crime, we conclude the evidence is insufficient for conviction. Necessary elements of the crime of malicious throwing of corrosive acid or alkaline are that the perpetrator (1) throw or cause the substance to be thrown (2) upon another person (3) with intent "to murder, maim or disfigure." N.C.G.S. § 14-30.1 (1981). If we assume, arguendo, the evidence is sufficient to permit a jury to find that defendant was responsible for the muriatic acid found on the windowsill and front door of Mrs. Modlin's residence, there is no evidence that defendant intended by its use to murder, maim or disfigure anyone or that he actually threw or attempted to throw the acid, or that he threw it or attempted to throw it at some person. We therefore reverse defendant's conviction in the acid throwing case (No. 83CRS3077). In all remaining convictions we find no error. The result is:

Case No. 83CRS3077 (acid throwing)—reversed.

Case No. 83CRS3075 (felonious assault)—no error.

Case No. 83CRS3076 (attempted burglary)—no error.

Case No. 83CRS3078 (felonious larceny of motor vehicle)—no error.

Case No. 83CRS3079 (larceny of firearm)—no error.

Case No. 83CRS3080 (burglary)—no error.

Case No. 83CRS3081 (larceny of firearm)—no error.

Case No. 83CRS3082 (nonfelonious larceny of motor vehicle)—no error.

Justice BILLINGS took no part in the consideration or decision of this case.