STATE OF NORTH CAROLINA v. STEVE ALBERT MITCHELL

No. 592A85

(Filed 12 August 1986)

1. Criminal Law § 48— post arrest statement—additional exculpatory testimony at trial—cross-examination proper

The trial court did not err in a prosecution for rape, armed robbery, kidnapping and larceny by allowing the prosecutor to cross-examine defendant about his failure to inform an officer about an alleged plan with the victim to destroy the victim's car and to defraud her insurance company where the officer had brought defendant from Tennessee to Lincoln County; defendant was informed of his rights before the trip began; defendant voluntarily engaged in conversation with the officer and said that after he had taken the car it had been stolen from him; and defendant testified at trial that the victim had offered to pay him to burn her car so she could collect insurance proceeds; that they had engaged in consensual sexual intercourse; and that the victim had created a plan whereby her house would appear to be robbed.

2. Criminal Law § 102.5— cross-examination of defendant—leading question—not assertion of personal opinion

The trial court did not err in a prosecution for rape, robbery, kidnapping and larceny by allowing the prosecutor to ask, during his cross-examination of defendant about defendant's testimony concerning the victim's alleged plan to destroy her car and collect insurance proceeds, whether it "took you awhile to dream all that stuff up . . .?" The question was in the nature of a leading question by which the prosecutor attempted to expose a fabricated defense and bore little similarity to the direct unequivocal accusations of prosecutors which have been held improper. N.C.G.S. § 8C-1, Rule 611(c) (Cum. Supp. 1985).

3. Robbery § 5.4— armed robbery—failure to instruct on common law robbery—no error

The trial court did not commit egregious error by failing to instruct on common law robbery as a lesser included offense of armed robbery where defendant testified that the gun which he had carried had not been loaded but his main defense was that the victim had engaged with him in feigning crimes which never really occurred.

4. **Constitutional Law § 34— convictions for first degree rape and first degree kidnapping — no objection at trial — waiver**

Defendant's contention that convictions and concurrent prison sentences for first degree rape and first degree kidnapping violated double jeopardy was waived by his failure to raise the issue at trial.

Justice EXUM concurs in the result.

APPEAL by the defendant from the order of *Allen, J.*, entered 13 June 1985 in the Superior Court, LINCOLN County.

The defendant was convicted of first degree rape, armed robbery, first degree kidnapping, and felonious larceny. He received a sentence of fourteen years for the armed robbery conviction and a consecutive life sentence for the rape conviction. Additional sentences totaling fifteen years for the kidnapping and larceny convictions were entered to run concurrently with the life sentence for rape. The defendant appealed the rape conviction and resulting life sentence to the Supreme Court as a matter of right under N.C.G.S. § 7A-27(a). On 2 October 1985, the Supreme Court allowed the defendant's motion to bypass the Court of Appeals on his appeal in the armed robbery, kidnapping, and larceny cases. Heard in the Supreme Court on 13 March 1986.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by David W. Dorey, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice.

The defendant brings forward assignments of error in which he contends that: (1) during cross-examination of the defendant, the prosecutor improperly impeached him with evidence of his exercise of his right to remain silent after he had been arrested and given the Miranda warnings; (2) the trial court erred in allowing the prosecutor to improperly communicate to the jury his personal belief that the defendant was lying; (3) the trial court erred in failing to submit the offense of common law robbery to the jury; and (4) his conviction and sentencing for both first degree rape and first degree kidnapping violated double jeopardy principles. We find no prejudicial error.

The State presented evidence which tended to show that on 17 April 1984, the victim took her two children to Joy Sain's house where they normally caught the bus for school. When she pulled into the driveway, the victim observed Sain and the defendant standing on the house steps. The defendant walked over to the car and asked the victim for a ride. The victim refused stating that she had to go home and dress for work. The victim testified that she knew the defendant, having seen him at Joy and David Sain's house on several occasions. The defendant was related to David Sain by marriage and lived in the Sain home.

After returning to her home and talking by telephone to a friend about the defendant, the victim dressed for work then returned to the Sain house and gave the defendant a ride. After she drove her car out of the Sain's driveway, the defendant pointed a gun at her. When she asked him what he was doing with the gun, he told her not to ask questions. He said that she would not be hurt if she followed his instructions. As he pointed the gun at her head, the defendant told her that he would kill her if she did not do exactly what he said.

The victim complied with the defendant's instructions to return to her house. During the entire trip to the house, the defendant pointed the gun at her head. Upon arrival at the victim's house, the defendant, with the gun still in his hand, demanded three hundred dollars. After being told that the victim had no money, the defendant dumped the contents of her pocketbook on a table. The victim testified that she later discovered that twenty dollars was missing from her pocketbook.

The defendant pulled the victim by the arm to the bedroom. He tied her hands behind her back with ripped pieces of towel, a string and a belt. He placed her on the bed and tied her feet together with pieces of towel and a coat hanger. During this entire period, the defendant had the gun nearby.

The defendant then sat on the victim's stomach. He pulled up her shirt and brassiere and put his mouth on her breasts. The defendant then unzipped her pants. When he realized he could not penetrate the victim with her legs tied, he untied them. After untying her legs, the defendant had sexual intercourse with the victim against her will. Throughout this period of time, the gun was laying on a dresser at the foot of the bed. The defendant there-

after tied a scarf around the victim's mouth and left the scene in her car. After he left, the victim worked her legs free and ran to the house of a neighbor for help.

Officer Robert Chapman, the investigating officer, testified that he escorted the defendant back to Lincoln County from Tennessee in February 1985. Before beginning the trip, Officer Chapman advised the defendant of his Miranda rights. Chapman testified that the defendant later initiated a conversation and "stated that he stopped at a truck stop near Atlanta and went in and left the car in the parking lot and when he came back, it had been stolen from him." While investigating at the victim's house, Chapman found pieces of towel, leather strips and a piece of wire.

Dr. Ari, a physician, testified that he examined the victim in a hospital emergency room on the morning of 17 April 1984. He was unable to examine her initially because she was "crying, upset, and jittery." After sedating the victim, Dr. Ari examined her and found red spots on both of her breasts. Dr. Ari observed red marks around both wrists and ankles. The victim's vaginal region appeared red.

The defendant testified that the victim offered to pay him five hundred dollars to burn her car so that she could collect insurance proceeds. The defendant told her that he would do so for six or seven hundred dollars. The defendant testified that they then agreed that he would destroy the car for five hundred dollars and sexual favors from the victim. He said that he later received one hundred dollars from her and that they engaged in consensual sexual intercourse.

The defendant testified that on 17 April 1984, they again engaged in consensual sexual intercourse at the victim's house. The victim created a plan whereby her house would appear to be robbed. The defendant was to tie her up and take her money and her car. The defendant testified that the victim dumped the contents of her pocketbook on the kitchen table. Following the victim's directions, the defendant then tied her hands and ankles. He then took her car and eventually went to Atlanta where the car was stolen from him.

[1] By his first assignment of error the defendant contends that the prosecutor improperly cross-examined him about his failure to

inform Officer Chapman of the plan to destroy the victim's car and to defraud the insurance company. He argues that such cross-examination violated his fifth amendment right to remain silent and denied him due process in violation of the dictates of *Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91 (1976). We do not agree.

In the present case, Officer Chapman testified on direct examination that he brought the defendant from Tennessee back to Lincoln County. Prior to the start of the long car trip, Chapman advised the defendant of his Miranda rights. During the trip, the defendant informed Chapman that the victim's car had been stolen from him when he stopped at a truck stop.

At trial, the defendant testified to the details of the plan to destroy the victim's car in order to obtain the insurance proceeds. The defendant further testified that he parked the car at a truck stop near Atlanta, and the car was stolen from him there. On cross-examination, the following transpired:

Q. Why did you tell Officer Chapman that you stole that car and it was stolen from you?

A. I told him the car was stolen from me.

Q. Why did you tell him you stole it? Why did you admit to stealing the car?

A. I told him I took the car. That was my own words.

Q. You didn't tell him any of this stuff about the elaborate conspiracy about turning it in on the insurance money, did you?

A. No, sir.

Q. You didn't tell him any of that?

A. No, he asked me if I wanted to tell him what happened and I could tell him what happened and they could help me then. And if I didn't tell him then and I talked to my lawyer, they wouldn't be able to help me out on my case, so I just didn't tell him. I told him I wanted to speak to my lawyer.

Q. Took you awhile to dream all that stuff up, too, didn't it.

MR. BLACK: OBJECTION.

THE COURT: OVERRULED.

A. I didn't dream it up.

The defendant contends that the prosecutor impermissibly used his silence after he had been arrested and given the Miranda warnings for impeachment purposes in violation of *Doyle*. We disagree.

In *Doyle*, two defendants were charged with selling marijuana to an undercover narcotics agent. At the time of arrest, the defendants were given Miranda warnings and chose to exercise the right to remain silent. At their separate trials each defendant testified that he had been "framed" by the narcotics agents. The prosecutor cross-examined each defendant about his failure to tell this to the authorities at the time of arrest.

The Supreme Court stated that the Miranda warnings contain an implicit assurance to a person who is given them that he will not be penalized for his postarrest silence. 426 U.S. at 618, 49 L.Ed. 2d at 98. The Supreme Court also said that:

> In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.; See United States v. Hale*, 422 U.S. 171, 182-83, 45 L.Ed. 2d 99, 108 (1975); *State v. Freeland*, 316 N.C. 13, 18, 340 S.E. 2d 35, 38 (1986). However, the Supreme Court has expressly tailored certain boundaries to *Doyle* in the more recent cases of *Jenkins v. Anderson*, 447 U.S. 231, 65 L.Ed. 2d 86 (1980); *Anderson v. Charles*, 447 U.S. 404, 65 L.Ed. 2d 222 (1980), and *Fletcher v. Weir*, 455 U.S. 603, 71 L.Ed. 2d 490 (1982) (per curiam).

In *Jenkins*, the Supreme Court held that *Doyle* was inapplicable in a case where the prosecutor referred to the defendant's *prearrest* silence. 447 U.S. at 240, 65 L.Ed. 2d at 96. The Court focused on the fact that "no governmental action induced petitioner to remain silent before arrest." *Id.*

In *Fletcher*, the defendant did not receive any Miranda warnings during the postarrest period in which he remained silent.

The Court declined to apply the *Doyle* principle "in the absence of the sort of affirmative assurances embodied in Miranda warnings . . . ." 455 U.S. at 607, 71 L.Ed. 2d at 494. *See State v. Burnett*, 39 N.C. App. 605, 251 S.E. 2d 717, *review denied*, 297 N.C. 302, 254 S.E. 2d 924 (1979) (same).

In *Anderson*, the Supreme Court declined to apply *Doyle* to a prosecutor's cross-examination that inquired into prior inconsistent statements of the defendant. 447 U.S. at 408, 65 L.Ed. 2d at 226. The Court stated that:

> Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.

*Id.; See Phelps v. Duckworth*, 772 F. 2d 1410 (7th Cir. 1985); *State v. Lane*, 301 N.C. 382, 271 S.E. 2d 273 (1980).

The rule set forth in *Doyle* likewise does not apply to the facts of the case *sub judice*. Here, the defendant did not exercise his right to remain silent after receiving Miranda warnings. He voluntarily engaged in conversation with Chapman and said that after he had taken the victim's car it had been stolen from him. The prosecutor did not attempt to capitalize on the defendant's reliance on the implicit assurances of the Miranda warnings, the concern embodied in the *Doyle* decision. *See State v. Freeland*, 316 N.C. 13, 19, 340 S.E. 2d 35, 38 (1986). The defendant had not relied on those implicit assurances and had not been induced to remain silent. As to the subject matter of his statements, the defendant did not remain silent at all. *Anderson*, 447 U.S. at 408, 65 L.Ed. 2d at 226. *Cf. United States v. Laughlin*, 772 F. 2d 1382 (7th Cir. 1985) (*Doyle* rule not applied where defendant testified at trial that he told exculpatory story to the authorities at the time of his arrest). This assignment of error is without merit.

[2] By his next assignment of error, the defendant contends that the trial court erred in overruling his objection to the prosecutor's question concerning whether he had fabricated the story about the plan to destroy the victim's car. On cross-examination, the prosecutor asked the defendant: "Took you a while to dream all that stuff up, too, didn't it?" The defendant answered: "I didn't dream it up."

The defendant contends that the prosecutor's question had the effect of asserting his personal opinion of the defendant's veracity. We have previously stated that a prosecutor may not assert his personal opinion concerning the veracity of a witness or state that the witness lied to the jury. *State v. Alston*, 294 N.C. 577, 586, 243 S.E. 2d 354, 361 (1978); *State v. Locklear*, 294 N.C. 210, 241 S.E. 2d 65 (1978). The prosecutor's question here, however, bears little similarity to the direct unequivocal accusations of the prosecutors in those cases in which we have applied the rule. In *Locklear*, for example, the prosecutor stated to the defendant during cross-examination, "you are lying through your teeth and you know you are playing with a perjury count; don't you?" 294 N.C. at 214, 241 S.E. 2d at 68.

Even while rendering its opinion in *Doyle*, the Supreme Court of the United States expressly recognized that, "unless prosecutors are allowed wide leeway in the scope of impeachment cross-examination some defendants would be able to frustrate the truth-seeking function of a trial by presenting tailored defenses insulated from effective challenge." 426 U.S. at 617, 49 L.Ed. 2d at 97 n. 7. The Supreme Court recognizes the "importance of cross-examination and of exposing fabricated defenses . . . ." *Fletcher*, 455 U.S. at 605, 71 L.Ed. 2d at 493. Further, the North Carolina Rules of Evidence follow the traditional view that the use of leading questions is a matter of right during cross-examination. Our Rules expressly state that: "Ordinarily leading questions *should* be permitted on cross-examination." N.C.G.S. § 8C-1, Rule 611(c) (Cum. Supp. 1985) (emphasis added). The prosecutor's question here was in the nature of a leading question by which he attempted to expose a fabricated defense. As such, it was proper.

[3] By his next assignment of error, the defendant contends that the trial court erred in failing to instruct on common law robbery as a lesser included offense of armed robbery. On appeal the defendant has informed us, as required, that he failed to object to the instructions and failed to request an instruction on common law robbery. *See State v. Oliver*, 309 N.C. 326, 307 S.E. 2d 304 (1983). The defendant's counsel only inquired as to whether the trial court planned to instruct on the lesser included offense. The defendant's failure to object to the trial court's instructions "con-

stitutes a waiver of the right to assert the alleged error on appeal." *Id.* at 334, 307 S.E. 2d at 311.

We have indicated, however, that on rare occasions we will apply the "plain error" rule first announced in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983) to grant a party relief from a particularly egregious error though no objection was made. But we have been careful to emphasize that before granting relief under the "plain error" rule,

> the appellate court must be convinced that absent the error the jury probably would have reached a different verdict. In other words, the appellate court must determine that the error in question 'tilted the scales' and caused the jury to reach its verdict convicting the defendant. Therefore, the test for 'plain error' places a much heavier burden upon the defendant than that imposed by N.C.G.S. § 15A-1443 upon defendants who have preserved their rights by timely objection. This is so in part at least because the defendant could have prevented any error by making a timely objection.

*State v. Walker*, 316 N.C. 33, 39, 340 S.E. 2d 80, 83 (1986) (citations omitted).

In the present case, the defendant admitted that he carried a gun at all pertinent times. He also testified, however, that the gun was not loaded. The latter testimony constituted an alternative defense. It was affirmative evidence tending to show that life was not threatened or endangered by the defendant. Therefore, the trial court was required to instruct the jury on the lesser included offense of common law robbery. *State v. Alston*, 305 N.C. 647, 290 S.E. 2d 614 (1982).

Here, however, the defendant's main defense was that no crime had been committed against the victim, because she had engaged with him in feigning crimes which never really occurred. It is highly unlikely, given the evidence in this case, that the jury disbelieved the defendant's story that no crime was committed against the victim yet believed him when he said that the gun was unloaded. We conclude that the trial court's failure to submit the lesser included offense of common law robbery to the jury was not such an egregious denial of a fundamental right as to be "plain error" entitling him to relief in the absence of an objection. *See generally State v. Walker*, 316 N.C. 33, 340 S.E. 2d 80 (1986).

**[4]** By his final assignment of error, the defendant contends that his convictions and concurrent prison sentences for first degree rape and first degree kidnapping violate double jeopardy principles. *State v. Freeland*, 316 N.C. 13, 340 S.E. 2d 35 (1986). The defendant failed to raise this issue at trial and, therefore, waiver has occurred. *State v. McKenzie*, 292 N.C. 170, 232 S.E. 2d 424 (1977).

The defendant received a fair trial free from prejudicial error.

No error.

Justice EXUM concurs in result.