STATE OF NORTH CAROLINA v. WILLIE LEE GARY, JR.

No. 375PA97

(Filed 9 July 1998)

**1. Indigent Persons § 10 (NCI4th)— appointed counsel— refusal to call certain witnesses—motion for new counsel denied**

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant's motion for a new counsel where defense counsel decided not to subpoena certain witnesses whom defendant claimed would have provided alibi testimony. Nothing in the record supports defendant's claim of ineffective assistance of counsel and nothing supports defendant's claim that he was denied his right to present his own witnesses and to establish a defense; a disagreement between the defendant and his court-appointed counsel over trial tactics is not sufficient to require the trial court to replace court-appointed counsel with another attorney.

**2. Criminal Law § 381 (NCI4th Rev.)— judge's comment—contrasting positions—defendant not directly implicated**

A noncapital first-degree murder defendant did not show substantial evidence of partiality or the appearance of partiality where the court included in its findings on defendant's motion to replace his appointed counsel the statement that "[i]t is readily apparent to anyone with an IQ level above room temperature that the differences between counsel and the defendant relate to trial strategy and tactics." That statement did not directly implicate either defendant or the merits of the case; read in context, it merely attempted to draw the contrast between defendant's characterization of a fundamental conflict involving his basic constitutional right to call witnesses and a more proper characterization of a difference of opinion as to trial strategy.

**3. Appeal and Error § 341 (NCI4th)— admission of evidence—no objection—no assignment of error—issues not considered**

A noncapital murder defendant's assignments of error to the admission of certain evidence were overruled where defendant made no objection at trial and waived plain error analysis by failing to assert plain error in his assignments of error.

**4. Evidence and Witnesses § 390 (NCI4th)— noncapital first-degree murder—defendant's prior bad acts—nature of relationship**

The trial court did not abuse its discretion in a noncapital first-degree murder prosecution by admitting testimony from the victim's mother concerning defendant's prior bad acts where, in context, the testimony was relevant to show the nature of the relationship between defendant and the victim and was not so inflammatory as to be excluded as unfairly prejudicial.

**5. Evidence and Witnesses §§ 322, 343 (NCI4th)— noncapital first-degree murder—prior assault on victim—admissible to show intent and identity**

The trial court did not abuse its discretion in a noncapital first-degree murder prosecution by admitting testimony concerning defendant's prior convictions for assault on a female and communicating threats. Defendant's prior assault on the victim tends to establish malice, intent, premeditation, and deliberation, and remoteness in time goes to the weight of the evidence rather than its admissibility. This evidence was also admissible to show identity in that evidence that defendant had assaulted the victim by throwing a hammer at her and the evidence that her death resulted from blows most likely caused by a hammer are sufficiently similar for the evidence of the prior assault to be admissible to show identity. The *voir dire* conducted by the court suggests that the trial judge weighed the probative value against the danger of unfair prejudice and did not abuse its discretion.

**6. Evidence and Witnesses § 876 (NCI4th)— noncapital first-degree murder—threats by defendant to victim—hearsay—admissible—state of mind**

The trial court did not err in a noncapital first-degree murder prosecution by allowing hearsay testimony from the victim's mother regarding threats made by defendant to the victim. N.C.G.S. § 8C-1, Rule 803(3) allows the admission of hearsay testimony if it tends to demonstrate the victim's then-existing state of mind; this testimony was admissible to show the victim's fear at the time of the conversation with her mother and to demonstrate the basis for her fear, namely, the threat to her life. The fact that this hearsay statement by defendant was contained within a hearsay statement by the victim does not affect its admissibility since both statements were admissible.

**7. Homicide § 250 (NCI4th)— first-degree murder—abusive relationship—premeditation and deliberation—evidence sufficient**

The trial court did not err in a noncapital first-degree murder prosecution by denying defendant's motions to dismiss where defendant contended that this was a crime of passion and that the State did not offer any direct evidence of premeditation or deliberation, but the evidence viewed in the light most favorable to the State showed that the victim and defendant had a stormy relationship, defendant abused the victim physically and the victim was afraid of defendant, defendant had on a prior occasion thrown a hammer at the victim and stated that he would kill her if she called the police, the victim had called the police and defendant had pled guilty to assault and communicating threats, defendant had threatened to kill the victim if she broke up with him, the victim was trying to break up with defendant, and she died as a result of repeated blows to her head with a hammer or hammer-shaped object. On this record, the State presented substantial evidence of premeditation and deliberation.

**8. Homicide § 552 (NCI4th)— first-degree murder—instruction on second-degree refused—no error**

The trial court did not err in a noncapital first-degree murder prosecution by not charging the jury as to the lesser-included offense of second-degree murder where all of the evidence supports a finding of premeditation and deliberation. Defendant argues that the wounds were consistent with a killing done in the heat of passion, but evidence of multiple blows to the head with a heavy, blunt object, any one of which could have killed the victim, does not in and of itself constitute evidence of a killing in the heat of passion; nothing else appearing, evidence that the fatal wounds were inflicted by a hammer or hammer-shaped object and that a hammer had been beside the victim's bed three days before the murder is insufficient for a rational juror to find that premeditation and deliberation are negated; and the contention that an argument or fight may have arisen in a "quasi-domestic relationship" based on the victim being found wearing only socks is mere speculation.

On writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review judgment imposing a sentence of life imprisonment entered by Albright, J., at the 3 October 1994 Criminal Session of Superior Court,

Guilford County, upon a jury verdict of guilty of first-degree murder in a noncapital trial. Heard in the Supreme Court 27 May 1998.

*Michael F. Easley, Attorney General, by Tina A. Krasner, Associate Attorney General, for the State.*

*A. Wayland Cooke and H. Davis North, III, for defendant-appellant.*

PARKER, Justice.

Defendant Willie Lee Gary, Jr. was indicted on 13 December 1993 for the first-degree murder of Carolyn Hammonds ("victim") on 26 October 1993. At the noncapital trial defendant was found guilty as charged and sentenced to life imprisonment. For the reasons discussed herein, we conclude that defendant's trial was free from prejudicial error.

The State presented evidence at trial tending to show that defendant and the victim had been seeing each other socially and that the victim was trying to break up with defendant because he had become physically abusive toward her. In May of 1993 defendant had assaulted the victim by throwing a hammer at her and threatening to harm her or kill her if she broke up with him or called the police. On 27 October 1993 the victim's father found the victim dead in her home in Greensboro, North Carolina. She was found lying on her back on the bed in her blood-spattered bedroom, wearing only socks. She had a large amount of blood on her head and face. She died as a result of blows to her head with a blunt object which, according to an expert medical examiner, was either a hammer or hammer-shaped object. Almost any of the several blows she suffered would have led to her death.

Detective David Spagnola of the Greensboro Police Department talked to the victim's parents, who lived three doors away and had seen defendant's truck go by the victim's house several times the night of the murder, 26 October 1993. The victim's next-door neighbor saw defendant's truck parked on the street outside the victim's house on the evening of 26 October 1993. Detective Spagnola obtained defendant's address and telephone number, drove to defendant's house, and called him from his car telephone. Detective Spagnola told defendant that he needed to speak with him and that he would send a police officer to pick him up if he would come out on the front porch. The detective then saw defendant go out the back door of the

house toward a storage shed. Detective Spagnola approached defendant, identified himself, and told defendant to sit down on the ground. An officer then arrived and arrested defendant on some outstanding warrants.

Michael DeGuglielmo, an expert in forensic analysis and DNA testing, compared the bloodstains found on pants owned by defendant to the victim's blood. He found the blood on defendant's pants to be consistent with the victim's blood to a statistical certainty of one in 1.4 billion.

Defendant presented no evidence.

[1] Defendant first contends that the trial court erred and violated both his federal and state constitutional rights by denying his motions for new counsel. Defendant was granted a pretrial hearing on his *pro se* motion alleging ineffective assistance of counsel. Judge Peter McHugh denied the motion and made the following findings of fact and conclusions of law: that there was no showing of ineffective assistance of counsel, that the standards of practice of defendant's trial counsel were in all regards according to the standards of legal practice in North Carolina, and that defendant failed to show good cause for an order from the court substituting counsel of record.

Defendant renewed his objections at trial; and, in the absence of the jury, the trial court entertained a lengthy and disjointed argument from defendant. The essence of defendant's contention was that his counsel's representation was ineffective in that counsel had decided not to subpoena certain witnesses whom defendant claimed would have provided alibi testimony. The trial judge denied defendant's motion for substitute counsel and entered the following findings of fact:

6. Basically, a conflict of wills has developed between the defendant and his court-appointed lawyer with regard to trial tactics and strategies;

. . . .

10. Indeed, the so-called witnesses that the defendant desires to subpoena are witnesses known to [defense counsel] and do not surprise him in the least. He is aware of what these witnesses will testify to, if called. He has made a strategic legal decision that these witnesses should not be called for [the] reason that in

his professional opinion they will do more harm than good to the defendant's cause[.]

Based on these findings of fact, the trial court concluded as a matter of law:

10. A mere disagreement between the defendant and his court-appointed counsel as to trial tactics is not sufficient to require the trial court to replace court-appointed counsel with another attorney. Trial counsel, whether court appointed or privately employed, is not the mere lackey or "mouthpiece" of his client. Indeed, he is in charge of and has the responsibility for the conduct of the trial, including the selection of witnesses to be called to the stand on behalf of his client and the interrogation of them. He is an officer of the Court and owes duties to it as well as to his client;

11. The existence here of a conflict of wills between the defendant and his court-appointed counsel with regard to trial strategy and tactics and the call of witnesses do[es] not require this Court to replace present counsel with another attorney under the totality of the circumstances. Indeed, the defendant's dissatisfaction with his court-appointed counsel appeared to the trial court to have been completely unjustified;

12. Such conflict of will, as described by the defendant in vague, general and overbroad terms does not rise to the level of a fundamental conflict involving the defendant's basic rights;

13. In the present case, this defendant has not shown ineffective assistance of counsel at trial or any impediment to the presentation of his defense caused by counsel's exercise of professional judgment. There is no substantial reason shown for the appointment of a replacement counsel[.]

Defendant now concedes that if this were a mere disagreement over trial tactics, defendant would not be entitled to new counsel. *State v. Thacker*, 301 N.C. 348, 352, 271 S.E.2d 252, 255 (1980). Defendant asserts, however, that this is a more substantial issue than a disagreement over trial tactics. Defendant contends that because his counsel did not issue process for or call his alibi witnesses to testify, defendant was denied his basic rights under both the Sixth Amendment to the United States Constitution, which affords criminal defendants the right "to have compulsory process for obtaining witnesses in his favor," and Article I, Section 23 of the North Carolina

Constitution, which guarantees a criminal defendant the right to "confront the accusers and witnesses with other testimony." We disagree with defendant's contentions.

After a review of the transcript and record, we conclude that the trial court properly denied defendant's motion for substitute counsel and that this denial does not impinge upon defendant's constitutional rights. As we have previously stated, "the type of defense to present and the number of witnesses to call is a matter of trial tactics, and the responsibility for these decisions rests ultimately with defense counsel." *State v. McDowell*, 329 N.C. 363, 384, 407 S.E.2d 200, 211 (1991). A disagreement between the defendant and his court-appointed counsel over trial tactics is not sufficient to require the trial court to replace court-appointed counsel with another attorney. *State v. Robinson*, 290 N.C. 56, 66, 224 S.E.2d 174, 179-80 (1976). In order to be granted substitute counsel, "the defendant must show good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust verdict." *State v. Sweezy*, 291 N.C. 366, 372, 230 S.E.2d 524, 528-29 (1976). Substitution of counsel rests in the sound discretion of the trial court. *Robinson*, 290 N.C. at 66, 224 S.E.2d at 180. Nothing in the record in this case supports defendant's claim of ineffective assistance of counsel, and nothing in the record supports defendant's claim that he was denied his right to present his own witnesses to establish a defense. Accordingly, this assignment of error is overruled.

[2] Defendant next contends that the trial judge made a disparaging comment about defendant's intelligence which called into question the trial judge's impartiality and which now entitles defendant to a new trial. Outside the presence of the jury, an extensive colloquy took place between defendant and the trial court when defendant moved to have his trial counsel replaced for failure to subpoena witnesses whom defendant wanted called. After this colloquy, in a lengthy dictated order denying defendant's motion, the trial court included in its findings of fact the statement that "[i]t is readily apparent to anyone with an IQ level above room temperature that the differences between counsel and the defendant relate to trial strategy and tactics." Defendant asserts that the trial judge should have recused himself under Canon 3C(1) of the North Carolina Code of Judicial Conduct, which provides in pertinent part that "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned," such as in a case in which "[h]e has a per-

sonal bias against a party." Code of Judicial Conduct Canon 3C(1)(a), 1998 Ann. R. N.C. 248.

We conclude that defendant has not presented substantial evidence of partiality or evidence manifesting an appearance of partiality on the part of the trial judge. *See State v. Scott*, 343 N.C. 313, 325-26, 471 S.E.2d 605, 612-13 (1996). The trial judge's statement did not directly implicate either defendant or the merits of the case. Read in the context of the entire order, this finding of fact merely attempted to draw the contrast between what defendant characterized as a fundamental conflict involving his basic constitutional right to call witnesses in his defense and what is more properly characterized as a difference of opinion as to trial strategy. Just prior to the finding of fact contested by defendant, the trial court noted that defendant's trial counsel was aware of the witnesses that defendant desired to subpoena; that trial counsel was aware of what those witnesses would testify to if called; and that trial counsel had made a strategic legal decision that those witnesses should not be called since, in his professional opinion, they would do substantially more harm than good to defendant's cause. This assignment of error is overruled.

[3] Defendant next argues five assignments in which he contends the trial court erred in admitting into evidence certain testimony by several of the State's witnesses. Specifically, defendant asserts that admission of the following testimony was error: (i) the testimony of Detective Spagnola that upon seeing defendant go out the back door, "I wasn't sure exactly what he was going to do. In my mind, I thought he was either going to flee the residence or maybe secure or hide a weapon back there or get a weapon"; (ii) the testimony of SBI Agent W.F. Lemmons that the blood stains on defendant's trousers were "high-velocity stains. Very small. Come from an impact"; (iii) the testimony by defendant's grandmother and by Detective D.M. Sexton that defendant had a child by another woman; (iv) the testimony of Carter Allen that on previous occasions he "observed what appeared to be the defendant pushing [the victim] back into her house" and that he saw defendant "forcefully putting his hand on [the victim]"; and (v) the testimony of Detective Sexton that defendant was transported to the Guilford County jail where he was "incarcerated on some unrelated charges."

Defendant concedes that in each instance he lodged no objection when the testimony was offered at trial but asserts in his assignments

of error that the trial court should have intervened *ex mero motu* to strike the testimony as irrelevant and prejudicial. We note that where a criminal defendant has not objected to the admission of evidence at trial, the proper standard of review is a plain error analysis rather than an *ex mero motu* or grossly improper analysis. *See State v. York*, 347 N.C. 79, 86, 489 S.E.2d 380, 384 (1997) (plain error analysis applied to admission of evidence); *State v. Cummings*, 346 N.C. 291, 313-16, 488 S.E.2d 550, 563-65 (1997) (plain error analysis applied to admission of confessions), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 873 (1998); *see also State v. Hester*, 343 N.C. 266, 272-73, 470 S.E.2d 25, 28 (1996) (correct standard of review of prosecutorial argument is not plain error but whether the arguments were so prejudicial and grossly improper as to require corrective action by the trial judge *ex mero motu*). Moreover, where a defendant fails to assert plain error in his assignments of error, as defendant has failed to do in this case, he has waived even plain error review. N.C. R. App. P. 10(c)(4); *State v. Truesdale*, 340 N.C. 229, 232-33, 456 S.E.2d 299, 301 (1995). Even assuming *arguendo* that defendant properly preserved plain error review and that the trial court committed some error in admitting the testimony cited in these assignments of error, we conclude that the alleged errors do not rise to the level of plain error. To prevail on plain error review, defendant must show that (i) a different result probably would have been reached but for the error or (ii) the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997). Defendant having failed to make the necessary showing, these assignments of error are overruled.

**[4]** Defendant also contends that the trial court erred in admitting the testimony of the victim's mother, Hazel Hobbs, concerning prior bad acts of defendant. Defendant objected at trial to the following testimony by Mrs. Hobbs: "He [defendant] cursed me out. I went down there to talk to him and he cursed at me and my husband through me." Defendant argues that although the trial court had ruled, pursuant to Rule 803(3) of the Rules of Evidence, that Mrs. Hobbs could testify to statements made by defendant to the victim to show the victim's state of mind, this statement had nothing to do with the victim's state of mind, was not relevant to any issue in the case, and could have been offered only to prejudice defendant unfairly in the eyes of the jury.

We conclude that, viewed in the context of the entire examination, the witness' testimony is relevant to show the nature of the

relationship between defendant and the victim and is, therefore, admissible:

Q: In the days or few weeks that preceded October 26, 1993, did you have occasion to speak to your daughter about her relationship with [defendant]?

A: Yes, sir.

Q: And what did she tell you?

A: She—she said, "Mama," she said, "I know how he is." But she said, "Let me work things out myself." Because she didn't want— she was just peace loving. She didn't want him to be angry with her.

Q: Now, when she said she wanted to work things out herself, what had happened or what had transpired or what had occurred to cause her to feel that she needed to work things out herself?

A: He started—he started abusing her. He started—he cursed every breath. He cursed me out. I went down there to talk to him and he cursed at me and my husband through me.

. . . .

Q: Did your daughter say that [defendant] had said anything to her about what he was going to do to her?

A: Yes, sir.

Q: Tell the jury about that[.]

A: I kept talking to her. And she had been under the doctor's care for her nerves, and she was beginning to look so peaked, I said, "Honey, what's the matter?" She said—she said, "He told me he'd kill me if I left him." And then he threatened her all along. And he told her again. She said that he would kill her if she didn't marry him. And she —

Q: Do you know when —

A: She just acted like she was just scared to death of him.

Furthermore, in context Mrs. Hobbs' statement to which defendant takes exception, that defendant cursed the victim's parents on one occasion, is not so inflammatory as to be excluded as unfairly prejudicial pursuant to N.C.G.S. § 8C-1, Rule 403. The trial court did not abuse its discretion in failing to exclude this testimony, and we overrule this assignment of error.

**[5]** By defendant's next assignment of error, he contends that the trial court erred in allowing into evidence testimony concerning defendant's prior convictions for assault on a female and communicating threats. The State offered evidence that defendant pled guilty to assaulting the victim by throwing a hammer at her and communicating a threat to her by stating, "If you call the police, when I get out I am coming back to kill you." Defendant argues that these offenses, which occurred on 2 May 1993, almost six months prior to the victim's death, were too remote in time to be relevant under Rule 404(b) of the Rules of Evidence. Defendant also argues that the evidence should have been excluded under Rule 403 of the Rules of Evidence since its probative value was substantially outweighed by the danger of unfair prejudice.

Under N.C.G.S. § 8C-1, Rule 404(b), " 'evidence of other offenses is *admissible* so long as it is *relevant to any fact or issue other than* the character of the accused.' " *State v. Coffey*, 326 N.C. 268, 278, 389 S.E.2d 48, 54 (1990) (quoting *State v. Weaver*, 318 N.C. 400, 403, 348 S.E.2d 791, 793 (1986)). Rule 401 provides that

> "[r]elevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

N.C.G.S. § 8C-1, Rule 401 (1992). Evidence is competent and relevant when it reveals a circumstance surrounding one of the parties and is necessary to understand properly their conduct or motives or if it allows the jury to draw a reasonable inference as to a disputed fact. *State v. Riddick*, 316 N.C. 127, 137, 340 S.E.2d 422, 428 (1986).

This Court has repeatedly held that evidence of a defendant's prior assaults on the victim for whose murder the defendant is being tried is admissible for the purpose of showing malice, premeditation, deliberation, intent or ill will against the victim under N.C.G.S. § 8C-1, Rule 404(b). *State v. Alston*, 341 N.C. 198, 229, 461 S.E.2d 687, 703 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996). In this case defendant's prior assault tends to establish malice, intent, premeditation, and deliberation—all elements of first-degree murder. Similarly, evidence of prior threats by a defendant against a victim has also been held by this Court to be admissible in trials for first-degree murder to prove premeditation and deliberation. *State v. Cox*, 344 N.C. 184, 188, 472 S.E.2d 760, 762 (1996). The remoteness in time of the prior assaults or threats generally goes to the weight of the evidence rather than to its admissibility. *Id.*

The evidence of defendant's prior assault on the victim was also relevant to show identity. In order for evidence of defendant's prior crimes or bad acts to be admissible to show the identity of the defendant as the perpetrator of the crime for which he is being tried, there must be " 'some unusual facts present in both crimes or particularly similar acts which would indicate that the same person committed both crimes.' " *Riddick*, 316 N.C. at 133, 340 S.E.2d at 426 (quoting *State v. Moore*, 309 N.C. 102, 106, 305 S.E.2d 542, 545 (1983)). The similarities need not rise to the level of the unique and bizarre, but must tend to support a reasonable inference that the same person committed both the earlier and the later acts. *State v. Stager*, 329 N.C. 278, 304, 406 S.E.2d 876, 891 (1991). In this case the State was required to prove the identity of the killer of the victim. Testimony from Dr. John D. Butts, the chief medical examiner, was that the victim died as a result of blows to her head from either a hammer or a hammer-shaped object. The evidence that defendant had assaulted the victim by throwing a hammer at her and the evidence that her death resulted from blows to the head most likely caused by a hammer are sufficiently similar for the evidence of the prior assault to be admissible to show identity under N.C.G.S. § 8C-1, Rule 404(b). *See State v. Carter*, 338 N.C. 569, 587-88, 451 S.E.2d 157, 167 (1994), *cert. denied*, 515 U.S. 1107, 132 L. Ed. 2d 263 (1995).

Whether to exclude relevant evidence as unfairly prejudicial under N.C.G.S. § 8C-1, Rule 403 is a matter left to the sound discretion of the trial court. *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992). In this case the trial court conducted *voir dire* to determine whether the evidence of defendant's prior convictions was offered pursuant to Rule 404(b) and was relevant for some purpose other than showing defendant's propensity for the type of conduct at issue. This hearing suggests that the trial judge weighed the probative value of the evidence against the danger of unfair prejudice. We conclude that the trial court did not abuse its discretion under Rule 403 by admitting this evidence. This assignment of error is overruled.

**[6]** Defendant next contends that the trial court erred in allowing hearsay testimony from Mrs. Hobbs, the victim's mother, regarding threats made by defendant to the victim. In response to the prosecutor's question, "Did your daughter say that [defendant] had said anything to her about what he was going to do to her?" Mrs. Hobbs answered, in pertinent part, "[S]he said, 'He told me he'd kill me if I left him.' " Defendant argues that it was error to admit this testimony over his objection and without a limiting instruction since the testi-

mony constituted double hearsay and since the State offered it for the inflammatory purpose of showing that defendant committed the murder rather than to show the victim's fearful state of mind. We disagree.

N.C.G.S. § 8C-1, Rule 803(3) allows the admission of hearsay testimony if it tends to demonstrate the victim's then-existing state of mind. *See Bishop*, 346 N.C. at 379, 488 S.E.2d at 776. A murder victim's statements falling within the state of mind exception to the hearsay rule are relevant to show the status of the victim's relationship to the defendant. *Scott*, 343 N.C. at 335, 471 S.E.2d at 618. The victim's statements relating factual events that tend to show the victim's state of mind when making the statements are not excluded from the coverage of Rule 803(3) where the facts "serve . . . to demonstrate the basis for the [victim's] emotions." *State v. Gray*, 347 N.C. 143, 173, 491 S.E.2d 538, 550 (1997), *cert. denied*, —— U.S. ——, 140 L. Ed. 2d 486 (1998). The testimony in this case was admissible to show the victim's fear at the time of the conversation with her mother and to demonstrate the basis for her fear, namely, the threat to her life. *See Lynch*, 327 N.C. at 223, 393 S.E.2d at 819. The fact that this hearsay statement by defendant was contained within a hearsay statement by the victim does not affect its admissibility since both statements were admissible. *State v. Larrimore*, 340 N.C. 119, 147, 456 S.E.2d 789, 803 (1995). This assignment of error is overruled.

**[7]** In defendant's next assignments of error, he contends that the trial court erred in denying his motions to dismiss the first-degree murder charge at the close of the State's evidence and again at the close of all the evidence on the ground that the State did not offer any direct evidence of premeditation or deliberation. Defendant argues that while there were several wounds to the victim, all indications were that this was a crime of passion carried out in one frenzied attack.

When considering a motion to dismiss for insufficiency of the evidence, the court must examine the evidence in the light most favorable to the State; and the State is entitled to every reasonable inference to be drawn from the evidence. *State v. Allen*, 346 N.C. 731, 739, 488 S.E.2d 188, 192 (1997). The court must also consider whether all the elements of the crime are supported by substantial evidence. *Id.* "Substantial evidence" is relevant evidence that a reasonable mind might accept as sufficient to support a conclusion. *Id.* First-degree murder is the unlawful killing of a human being with malice, premed-

itation, and deliberation. *State v. Skipper*, 337 N.C. 1, 26, 446 S.E.2d 252, 265 (1994), *cert. denied*, 513 U.S. 1134, 130 L. Ed. 2d 895 (1995). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *State v. Conner*, 335 N.C. 618, 635, 440 S.E.2d 826, 835-36 (1994). "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836. Notwithstanding cases from other jurisdictions cited by defendant, this Court has stated:

> Among other circumstances from which premeditation and deliberation may be inferred are (1) lack of provocation on the part of the deceased, (2) the conduct and statements of the defendant before and after the killing, (3) threats and declarations of the defendant before and during the occurrence giving rise to the death of the deceased, (4) ill-will or previous difficulty between the parties, (5) the dealing of lethal blows after the deceased has been felled and rendered helpless, (6) evidence that the killing was done in a brutal manner, and (7) the nature and number of the victim's wounds.

*State v. Vause*, 328 N.C. 231, 238, 400 S.E.2d 57, 62 (1991).

In this case, viewing the evidence in a light most favorable to the State, the evidence showed the following: that the victim and defendant had a stormy relationship; that defendant abused the victim physically; that the victim was afraid of defendant; that defendant had on an earlier occasion assaulted the victim by throwing a hammer at her and that he threatened her at that time stating, "If you call the police, when I get out I am coming back to kill you"; that the victim called police in that instance, leading to defendant's arrest and guilty plea to charges of assault and communicating threats; that at various other times, defendant threatened to kill the victim if she broke up with him; that the victim was trying to break up with defendant; that the victim died as a result of repeated blows to her head with a hammer or hammer-shaped object. On this record we conclude that the State presented substantial evidence of premeditation and deliberation and that the trial court properly submitted to the jury the question of defendant's guilt of first-degree murder based on the theory of premeditation and deliberation. These assignments of error are overruled.

[8] In his final assignment of error, defendant asserts that the trial court erred in not charging the jury as to the lesser-included offense of second-degree murder. Murder in the second degree is defined as the unlawful killing of another with malice but without premeditation and deliberation. *State. v. Lambert*, 341 N.C. 36, 46, 460 S.E.2d 123, 129 (1995). The test for determining whether an instruction on second-degree murder is required is as follows:

> The determinative factor is what the State's evidence tends to prove. If the evidence is sufficient to fully satisfy the State's burden of proving each and every element of the offense of murder in the first degree, including premeditation and deliberation, and there is no evidence to negate these elements other than defendant's denial that he committed the offense, the trial judge should properly exclude from jury consideration the possibility of a conviction of second degree murder.

*State v. Strickland*, 307 N.C. 274, 293, 298 S.E.2d 645, 658 (1983), *overruled in part on other grounds by State v. Johnson*, 317 N.C. 193, 344 S.E.2d 775 (1986). An instruction on a lesser-included offense must be given only if the evidence would permit the jury rationally to find defendant guilty of the lesser offense and acquit him of the greater. *State v. Conaway*, 339 N.C. 487, 514, 453 S.E.2d 824, 841, *cert. denied*, 516 U.S. 884, 133 L. Ed. 2d 153 (1995).

Defendant argues that the evidence was sufficient for a jury rationally to conclude that defendant killed the victim in the heat of passion and without premeditation and deliberation. Defendant points to three factors to support this contention: (i) the nature of the wounds, (ii) that defendant may have arrived at the victim's house unarmed, and (iii) that the victim was found wearing only socks. Defendant first argues that the wounds were consistent with a killing done in the heat of passion. Evidence of multiple blows to the head with a heavy, blunt object, any one of which blows could have killed the victim, does not, however, in and of itself constitute evidence of a killing in the heat of passion. Defendant presented no evidence to support a heat-of-passion killing, and mere speculation is not sufficient to negate evidence of premeditation and deliberation.

Next, defendant argues that the State's evidence that a hammer had been beside the bed in the victim's room three days before the murder and that the fatal wounds were inflicted by a hammer or a hammer-shaped object "certainly indicates the murder weapon was on the premises and not brought there by the assailant" and that the

killing might not have been premeditated and deliberate. Nothing else appearing, this evidence is insufficient for a rational juror to find that premeditation and deliberation are negated. Defendant's reliance on *State v. Gladden,* 315 N.C. 398, 340 S.E.2d 673 (1986); *State v. Calloway,* 305 N.C. 747, 291 S.E.2d 622 (1982); *State v. Myers,* 299 N.C. 671, 263 S.E.2d 768 (1980); and *State v. Potter,* 295 N.C. 126, 244 S.E.2d 397 (1978), cases where this Court has recognized evidence that defendant brought a weapon to the murder scene as evidence of premeditation, is misplaced. The fact that a defendant uses a weapon already at the scene does not, standing alone, negate premeditation and deliberation or raise the inference that the defendant acted in the heat of passion.

Finally, defendant argues that the jury could infer from the fact that the victim was found wearing only socks that an argument or fight may have arisen in the "quasi-domestic relationship" existing between her and defendant, which may have led to a killing in the heat of passion. This contention again is mere speculation. No evidence suggested that the victim and defendant argued or fought just prior to the murder or that the victim in any way provoked defendant.

In sum defendant has shown no evidence supporting the submission of second-degree murder. All the evidence in this case supports a finding of premeditation and deliberation: the threats to kill the victim if she left him or if she called the police after he assaulted her with a hammer, the demonstrated malice as evidenced by repeated physical abuse, and the multiple blows to the victim's head with a hammer or hammer-shaped object. Accordingly, the trial court did not err in failing to instruct the jury on second-degree murder, and this assignment of error is overruled.

For the foregoing reasons we conclude that defendant received a fair trial free from prejudicial error.

NO ERROR.