STATE OF NORTH CAROLINA
v.
KENDRICK TORRENDE McCRAY
No. COA07-1255
Court of Appeals of North Carolina
Filed June 17, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General LaShawn L. Strange, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Kristen L. Todd, for defendant.
WYNN, Judge.
"A defendant's silence after receiving Miranda warnings cannot be used against him as evidence of guilt."[1] In this case, Defendant Kendrick McCray argues the trial court committed plain error by allowing a police officer to testify that he refused to make a statement after being read his Miranda rights. Although the officer should not have been allowed to testify as to whether Defendant chose to remain silent, because Defendant failed to show that "a different result probably would have been reached but forthe error," State v. Gary, 348 N.C. 510, 518, 501 S.E.2d 57, 63 (1998), we find that the trial court did not commit plain error.
At trial, the State's evidence tended to show that Chaiquita Whitehead had a romantic relationship with Defendant from September 2005 to February 2006, at which time she told him that she only wanted to be friends. Ms. Whitehead and Defendant were employed by Kentucky Fried Chicken (KFC) in Nash County, North Carolina.
On 10 May 2006, while Defendant and Ms. Whitehead were at work, Defendant observed her talking to a male friend at the drive-thru window, and subsequently became upset with her and told her "not to [Fing] talk to him no more." Ms. Whitehead testified that Defendant left KFC around 12:00 p.m., but when he returned around 2:00 p.m., he told her "don't ever mess with him again or he would cut my throat" and punched her in the face. Ms. Whitehead testified that she told her manager, Rometta Battle, about being punched and threatened by Defendant.
walked out of the back door of KFC around 6:00 p.m. to find Defendant standing by Ms. Battle's truck, parked approximately 1-2 yards from the back door. Ms. Battle testified that Defendant told her that he wanted to talk to Ms. Whitehead and he told Ms. Whitehead "don't [F] with him." Ms. Battle told Defendant to leave and got in between Defendant and Ms. Whitehead, but Defendant swung around Ms. Battle and cut Ms. Whitehead with a razor blade from the bridge of her nose to under her right eye. Ms. Whitehead was taken to the hospital where she received 20 stitches. Ms. Whitehead testified that it took approximately three months for her scar to heal.
After Ms. Battle identified Defendant, police officer Treva McClain took Defendant into custody and placed him inside her vehicle. Officer McClain then took Defendant to the police station where she read him his Miranda rights. When asked whether Defendant waived his rights and made a statement, Officer McClain stated, "He refused to be fingerprinted or photographed. He refused to answer any questions. The only thing that he told me [was] that she shouldn't have been [Fing] with me."
Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury. During jury deliberations, the jury sent a note asking to view Ms. Whitehead's scar for a second time, as they had already seen it during her testimony. Defendant did not object and the trial court allowed Ms. Whitehead to walk up and down the jury box so the jury could view her scar. The jury found Defendant guilty and he was sentenced to 100 to 129 months' imprisonment.
On appeal, Defendant argues the trial court erred by allowing (I) Officer McClain to testify that he refused to make a statement after being read his Miranda rights, and (II) the jury to view Ms. Whitehead's scar during deliberations.

I.
Regarding Defendant's first argument, the record shows that Defendant failed to object to Officer McClain's testimony; thus, our review is limited to whether the trial court committed plain error. See State v. Black, 308 N.C. 736, 740-41, 303 S.E.2d 804, 806-07 (1983) (holding that the plain error rule also applies to questions of the admissibility of evidence). "To prevail on plain error review, defendant must show that (i) a different result probably would have been reached but for the error or (ii) the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." State v. Gary, 348 N.C. 510, 518, 501 S.E.2d 57, 63 (1998).
The United States Supreme Court has held that Miranda warnings
require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested.
Doyle v. Ohio, 426 U.S. 610, 617, 49 L. Ed. 2d 91, 97 (1976) (citations omitted). Following Doyle, our Supreme Court held that "[a] defendant's silence after receiving Miranda warnings cannot be used against him as evidence of guilt." State v. Best, 342 N.C. 502, 519, 467 S.E.2d 45, 55-56, (citing Doyle v. Ohio, 426 U.S. 610, 49 L. Ed. 2d 91), cert. denied, 519 U.S. 878, 136 L. Ed. 2d 139 (1996). Nonetheless, our Supreme Court has held that Doyle does not apply where a defendant did not exercise his right to remain silent and instead voluntarily engaged in conversation afterreceiving Miranda warnings.State v. Mitchell, 317 N.C. 661, 667, 346 S.E.2d 458, 461-62 (1986).
In this case, Officer McClain testified that she placed Defendant in custody and that he did not say anything until they got to the station. Officer McClain then testified as follows:
Q: When you got to the station did you read him his Miranda Rights?
A: Yes, sir.
Q: Did he waive those rights and make a statement?
A: He refused to be fingerprinted or photographed. He refused to answer any questions. The only thing that he told me [was] that she shouldn't have been [F-ing] with me, and that was that.
Q: He said what?
A: That she shouldn't have been [F-ing] with me.
. . .
Q: That's all he said?
A: That's all he said.
The State argues that Doyle does not apply because Defendant did not remain silent, but instead told Officer McClain "she shouldn't have been [F-ing] with me." Although we agree that Officer McClain was properly allowed to testify to Defendant's voluntary statement that "she shouldn't have been [F-ing] with me," see Mitchell, 317 N.C. at 667, 346 S.E.2d at 461-62, she should not have been allowed to testify as to whether Defendant chose to remain silent. However, because our review is limited to plain error, Defendant must show that a "different result probably would have been reachedbut for the error" or "the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." Gary, 348 N.C. at 518, 501 S.E.2d at 63.
Here, there was other evidence to support the jury's guilty verdict, including the testimony from Ms. Whitehead and Ms. Battle. Additionally, although Officer McClain was allowed to testify that Defendant "refused to be fingerprinted or photographed," and "refused to answer any questions," the State did not specifically use that testimony as evidence of Defendant's guilt. Cf. State v. Shores, 155 N.C. App. 342, 352, 573 S.E.2d 237, 242 (2002) (awarding defendant a new trial because "[t]he State's cross-examination of defendant, examination of the officer and closing argument attacked defendant's exercise of his right against self-incrimination in such a manner as to leave a strong inference with the jury that part of defendant's testimony was an after-the-fact creation."); State v. Quick, 337 N.C. 359, 366, 446 S.E.2d 535, 539 (1994) (vacating and remanding where a police officer erroneously testified that the defendant remained silent when faced with an accusation of murder because the State's purpose for presenting the testimony was to demonstrate to the jury that defendant did not deny the accusation, allowing the jury to infer guilt and lack of remorse).
We hold that Defendant has not shown that a "different result probably would have been reached but for the error." Gary, 348 N.C. at 518, 501 S.E.2d at 63. Accordingly, we reject this assignment of error.

II.
In his next assignment of error, Defendant argues that the trial court committed plain error by allowing the jury to view Ms. Whitehead's scar during deliberations. Specifically, Defendant contends that because Ms. Whitehead's scar was not properly admitted into evidence, the jury should not have been allowed to view it pursuant to N.C. Gen. Stat. § 15A-1233. We disagree.
Because Defendant did not object to Ms. Whitehead showing her scar to the jury after the jury requested to view it, we are limited to plain error review. See Black, 308 N.C. at 741, 303 S.E.2d at 807. As we stated earlier, to prevail on plain error review, a defendant must show that "(i) a different result probably would have been reached but for the error or (ii) the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." Gary, 348 N.C. at 518, 501 S.E.2d at 63.
Here, Defendant has failed to show that allowing the jury to view Ms. Whitehead's scar during deliberations constituted plain error. During Ms. Whitehead's testimony, she stated that "I was cut from the bridge of [my] nose to under my right eye," and noted that she received twenty stitches as a result of Defendant cutting her. Additionally, the jury was allowed to view Ms. Whitehead's scar during her testimony, as the trial court instructed her to "exhibit to them what you just described[,]" and she walked from one end of the jury box to the other, facing the jurors.
Because the jury had previously viewed Ms. Whitehead's scar during her testimony without objection and heard her describe thecut, scar, and medical treatment, Defendant has failed to show that "a different result probably would have been reached but for the error." Id. Accordingly, we reject this assignment of error.
No prejudicial error.
Judges CALABRIA and GEER concur.
Report per Rule 30(e).
NOTES
[1] State v. Best, 342 N.C. 502, 519, 467 S.E.2d 45, 55-56, (citing Doyle v. Ohio, 426 U.S. 610, 49 L. Ed. 2d 91), cert. denied, 519 U.S. 878, 136 L. Ed. 2d 139 (1996).